**UNITED STATES of America, Plaintiff,**

v.

**Carl Edward COLE, Defendant.**

**No. 1:92:CR:65.**

United States District Court, W.D. Michigan.

April 13, 1993.

David A. Dodge, David A. Dodge, P.C., Kelly A. Shadowens, Nieuwenhuis & Shadowens, Frank E. Stanley, Frank Stanley, P.C., Grand Rapids, MI, for defendant.

Jeffrey E. Theodore and John A. Smietanka, U.S. Attys., Grand Rapids, MI, for U.S.

## OPINION II

ENSLEN, District Judge.

This case is before the Court for sentencing of defendant Carl Edward Cole, who was originally scheduled to be sentenced by this Court on January 13, 1993. On that date, the parties presented arguments concerning two objections filed by defendant to the Presentence Report. Specifically, the objections were (1) Mr. Cole disagreed with the "cross-referencing" of his conviction from a firearms offense to attempted murder (by cross-referencing his conviction, the base offense level jumped from a level 12 to a level 20); and, (2) Mr. Cole objected to the two-point increase for obstruction of justice. This Court upheld Mr. Cole's objection to the cross-reference to attempted murder, but did not find in his favor with respect to obstruction of justice. Thus, his base offense level was 12; plus a two-point increase for obstruction of justice. Accordingly, Mr. Cole's sentencing range was from 15 to 21 months.[1]

At the hearing, I noted that the government had made reference in its sentencing memorandum to a possibility of moving for an upward departure under 18 U.S.C. § 3553(b). I asked the government's attorney if he wished to file a written motion on this issue. The Assistant U.S. Attorney indicated that he wanted the opportunity to do so. Thus, I continued this sentencing until today.

The government has filed two motions. First, the Court is asked to reconsider the applicable guidelines section. Specifically, the government asks this Court to cross-reference the offense committed by Mr. Cole to a state of Michigan firearms offense. Secondly, if I decline to cross-reference to the state firearms offense, then the government seeks an upward departure under 18 U.S.C. § 3553(b). Defendant strongly objects to these motions.

### Facts

On June 29, 1989 a pipe bomb had exploded at 6:30 a.m. in a vehicle owned and operated by an employee of Bil Mar Foods, located in Zeeland, Michigan. The explosion occurred in the parking lot of Bil Mar. The van was owned by Leopoldo Alvarado. It is unclear why the pipe bomb went off, that is, no one could determine whether the bomb was lit—or—whether a timing device set it off—or—what caused the pipe bomb to explode.

The Bureau of Alcohol, Tobacco & Firearms ("ATF") began an immediate investigation of the incident. Mr. Alvarado was one of the first people interviewed by ATF agents. He informed the agents that he believed a man by the name of Carl Edward Cole was responsible for putting the device in his van because he and Mr. Cole were rivals for a woman named Theresa Ackerberg. They previously had a fist fight over Ms. Ackerberg.

Mr. Cole was investigated by ATF. He was interviewed on several occasions and denied planting the bomb on Mr. Alvarado's van. Moreover, Mr. Cole stated that he never made pipe bombs or any other types of

---

1. For reasons discussed by the Court on January 13, 1993, the 1988 version of the Sentencing Guidelines is in effect for this sentencing.

explosives. However, there was evidence that Mr. Cole did in fact experiment with explosive devices prior to June 29, 1989.

Mr. Cole was found guilty by a jury on October 14, 1992 of a two count indictment charging him with a firearms offense. Specifically, Count I of the indictment charged that Cole knowingly received and possessed a firearm, to wit: a bomb, which was not registered to him in the National Firearms Registration and Transfer record, in violation of Title 26, sections 5861(d), 5845 and 5871. Count II charged Mr. Cole with knowingly making a firearm, to wit: a bomb, in violation of Title 26, sections 5861(f), 5845, 5871 and 5822.

### *Discussion*
### Motion to Reconsider

In its motion to reconsider, the government makes the following argument:

(1) This Court found that the applicable guideline for defendant was § 2K2.2 (1988 version).

(2) Under 2K2.2(c), the Court is instructed to cross-reference to any analogous offense if the resulting offense is higher than the sentence dictated by § 2K2.2.

(3) An appropriate cross-reference in this case is to a state offense under Chapter 13 of the Michigan Penal Code entitled "Explosives and Bombs." Specifically,

PLACING EXPLOSIVES WITH INTENT TO DESTROY AND CAUSING DAMAGE TO PROPERTY—Any person who places in, upon, under, against or near to any building, car, vessel or structure, gunpowder or any other explosive substance, with intent to destroy, throw down or injure the whole or any part thereof, which explosive substance shall cause the destruction or injury of the property of another, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 25 years.

Mich.Comp.Laws Ann. § 750.206 (1991 West).

The government also suggests that the following two state statutes may be applicable for cross-referencing purposes:

SENDING OR TRANSPORTING DEVICE REPRESENTED OR PRESENTED AS AN EXPLOSIVE, INCENDIARY DEVICE OR BOMB—A person who, with the intent to terrorize, frighten, intimidate, threaten, harass, molest, or annoy any other person, sends or transports a device which is so constructed as to represent, or is presented as, an explosive, incendiary device, or bomb, is guilty of a felony. An offense is committed under this section if the device is sent from or received in this state, and may be prosecuted in the jurisdiction from where it was sent or received.

Mich. Comp. Laws Ann. § 750.204a

INTIMIDATION OR HARASSMENT BY DEVICE REPRESENTED OR PRESENTED AS AN EXPLOSIVE, INCENDIARY DEVICE, OR BOMB—A person who knowingly delivers or places a device with the intent to terrorize, frighten, intimidate, threaten, harass, molest, or annoy any other person, when the device is so constructed as to represent, or is presented as, an explosive, incendiary device, or bomb, is guilty of a felony.

Mich.Comp.Laws Ann. § 750.205a:

(4) In *United States v. Smith*, 910 F.2d 326, 329–30 (6th Cir.1990), the Sixth Circuit held that the cross-referencing provision of § 2K2.2 applies to state, as well as federal offenses. Thus, reference to § 750.206 is appropriate.

(5) Because the Guidelines' index does not make reference to state crimes, to sentence Mr. Cole by cross-referencing to a state statute, the Court must refer to § 2X5.1, other offenses, which provides,

If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline the provisions of 18 U.S.C. § 3553(b) shall control.

(6) The most analogous federal offense to the state offenses is set forth in 18 U.S.C. § 844(i) which states:

whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any build-

ing, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000 or both ...

(7) The guideline for § 844(i) is § 2K1.4 (Arson: Property Damage By Use of Explosives). This provision states, in part,

(a) Base Offense Level: 6

(b) Specific Offense Characteristics

   (1) If the defendant knowingly created a substantial risk of death or serious bodily injury, increase by 18 levels.

   (2) If the defendant recklessly endangered the safety of another, increase by 14 levels.

Thus, the government argues that this Court should cross-reference under § 2K2.2 and sentence defendant under § 2K1.4. Defendant's base level should be 6 plus an 18, or at least a 12, level increase under specific offense characteristics. Accordingly, the government argues, with the two-point increase for obstruction of justice, defendant's offense level should be 26, or at least 22.

In response to the motion for reconsideration, defendant makes the following points:

(1) The government waived the cross-reference to the state firearms offense argument because it did not timely raise this objection.

(2) Even if the government did not waive the cross-reference to the state firearms statute argument, it should be denied on the merits because:

   (a) the state statute the government wants to cross-reference to, § 750.206, has a specific intent requirement that was not proven, or considered, at trial; and

   (b) defendant did not have the requisite mens rea for conviction under § 750.206.

■ The Court denies the government's motion to reconsider based on a number of factors. First, Western District of Michigan, Local Rule 50, states that:

Within fifteen days after disclosure of the presentence report, each counsel or *pro se* defendant shall file a written response to the probation office which shall acknowledge disclosure, and which shall contain *all* objections, and the reasons therefore, to any material information, sentencing classifications, sentencing guideline ranges, and policy states contained in or omitted from the report, or which shall contain a statement that there is no objection to the report....

   \*    \*    \*    \*    \*    \*

Upon a showing of good cause, the court may allow a new objection to be raised at any time prior to the imposition of sentence.

W.D.Mich. Local Rule 50(c) & (i).

The government did not file any objections. However, it did state that, if this Court did not cross-reference to attempted murder, it would like the Court to consider an upward departure. Because the Court could not depart upward without notice to defendant, I asked the parties to brief this issue and rescheduled the sentencing for today.

In the interim, the Assistant U.S. Attorney indicated to the Court *ex parte* that he was going to file a motion to reconsider. I did not stop him at that time, but I should have. Instead, believing that the government was truly filing a motion to reconsider, rather than a motion making an entirely new argument, I did not inform the Assistant U.S. Attorney to only file the motion on an upward departure.

It is unwise and unfair to allow the government to keep coming back with motion after motion if it loses on its initial argument. The probation officer did not have a chance to consider this argument; Mr. Cole had very little notice of this argument; and, the Court instructed the parties to only brief the issue of upward departure.[2]

---

**2.** The government correctly argues that it did not raise this cross-referencing issue earlier because it was not ripe, e.g., it had no reason to bring it up at an earlier stage of the proceedings. However, it is also true that this hearing today would

not have been scheduled but for the fact that I inquired whether the government wanted to file a motion for an upward departure. If this sentencing had taken a normal course, Mr. Cole would have been sentenced on January 13, 1993

Accordingly, I find that the motion to reconsider is inappropriately brought. The motion does not ask the Court to reconsider a previous decision. Instead, it asks the Court at the eleventh hour to sentence on an entirely new basis. I find that the government has not shown good cause in accordance with Local Rule 50. Thus, I find that the government waived this argument.

■ Secondly, even considering the motion to reconsider on the merits, I find that it must be denied. First, while I recognize that the Sixth Circuit has stated that it is appropriate for a district court to cross-reference to a state offense for purposes of sentencing, *United States v. Smith*, 910 F.2d 326, 329–30 (6th Cir.1990), I do not believe that the Sixth Circuit intended the result cross-referencing would create in this case. Specifically, here, reference to the Michigan state offense, § 750.206, is used entirely as a "straw man," so that the government can sentence Mr. Cole under 18 U.S.C. 844(i). That is, *the government concedes* in its brief that it wanted to convict (and sentence) Mr. Cole under § 844(i). Government's Brief at 3 n. 1. However, *the government also concedes that it was unable to convict* under this statute because it could not prove all of the elements, e.g., that the van Mr. Cole put the bomb on was used in interstate commerce. Thus, but for the fact that this van was not used in interstate commerce, the government could have charged Mr. Cole under § 844(i). Nonetheless, by referring to a state statute, the "straw man," the government argues that it should be allowed to sentence Mr. Cole as if he were convicted under § 844(i).

I realize that the sentencing guidelines allow a court to sentence for crimes not charged; to cross-reference to offenses not charged, including state offenses; and, to sentence on a preponderance, rather than a reasonable doubt, evidentiary standard. Here, however, I believe I would be going one step too far: sentencing a man under a statute that *the government concedes* it could not convict under. I refuse to add to the erosion of our constitutional rights.

As an aside, I note that cross-referencing to state offenses raises a number of issues that the higher courts have not addressed. For instance, what are the limits, if any, of cross-referencing to state offenses? Can a district court consider any offense in any state—or—just offenses in the state in which it sits for purposes of cross-referencing? If a court can only consider offenses in its own state, is it constitutional for two defendants who committed the exact same federal offense in two different states to receive drastically different treatment simply because they committed the same federal offense in different states? [3] If this is true, doesn't this cut against the alleged "purpose" of the sentencing guidelines to promote uniformity in sentencing?

If, on the other hand, a court is not limited in considering state offenses, is the court obligated to undertake lengthy and costly Lexis and Westlaw searches for every sentencing involving this issue to determine whether there may be a statute in a state somewhere that the court could use for sentencing?

Moreover, how does a court define an "analogous" offense for purposes of sentenc-

---

and the government would not have been able to file any motion on an upward departure. Thus, while the government's motion to reconsider has never been "ripe" before, in a normal sentencing, it never would have been ripe (e.g., it never would have been considered).

3. For instance, assume that Mr. Z commits a federal firearms offense in Michigan which carries a hypothetical federal sentence of 24 months. Assume also that Michigan has a firearms statute to which the government can cross-reference Mr. Z's original offense. Through this cross-reference to the state offense, the government is able to "bounce" up to a higher offense in the Federal Sentencing Guidelines which gives Mr. Z a sentence of 64 months. In this case, a court is only able to sentence Mr. Z to 64 months because of the cross-reference to the Michigan state statute.

Assume also that Ms. X commits the same federal firearms offense in Indiana. However, Indiana does not have the same (or similar) state statute that the government used for cross-referencing purposes in Michigan in the case of Mr. Z. Thus, the government can not use any Indiana state statute to "bounce" up to the higher federal sentence. Accordingly, the government (and court) is stuck with the 24 month sentence. The obvious result of this scenario is that "likes are not treated alike" which cuts against the alleged goal of the Sentencing Guidelines.

ing under § 2X5.1? Often, comparing state and federal offenses will be like comparing apples and oranges. Many elements may be different between the state statute cross-referenced, and the federal statute used for sentencing. How close must the "analogous" statute be? [4]

■ Finally, I am not convinced that cross-reference to Michigan Statute § 750.-206 is appropriate in this case. If I were to cross-reference, I believe that Michigan Statute § 750.205a would be the most appropriate statute. As is discussed above, this statute addresses the situation where a person "knowingly delivers" a bomb or explosive device with the "intent to terrorize, frighten, intimidate, threaten, harass, molest, or annoy any other person." Defendant concedes that this was the nature of his activity, e.g., to scare or intimidate. Defendant's Brief at 6 n. 2. If I were to cross-reference under this state statute, § 750.205a, I am not convinced that § 844(i) would be the "most analogous" statute for sentencing. Certainly, Michigan statute § 750.205a and 18 U.S.C. § 844(i) do not have a lot in common. Thus, unless the parties could point to another federal statute, I believe that the Court would sentence under 18 U.S.C. § 3553(b)—which leaves sentencing to the Court's discretion giving due regard to the factors under § 3553(a)(2).

Accordingly, for all of the reasons just stated, I will not cross-reference under § 2K2.2(c)(1).

### Motion for an Upward Departure

■ In the alternative, the government argues that I should depart upward under 18 U.S.C. § 3553(b). Under this provision, a court may depart if the guidelines did not take into account a relevant "aggravating or mitigating" factor. Here, the government argues that a relevant aggravating factor not taken into account by the guidelines was that defendant's conduct created a "risk of serious bodily injury to multiple individuals." Accordingly, the government argues, the Court should depart upward.

In response to the alternative motion, defendant argues that this Court should not depart. First, defendant asserts that the government overstates the facts when it argues that Mr. Cole's conduct "posed a substantial risk of death or bodily injury to multiple individuals." Defendant points to the following two facts in support of his argument: (1) no one was injured, and (2) little damage was done to Mr. Alvarado's van (only $400.00). Thus, defendant argues, there are not any unusual facts here so that the Court can depart under § 3553(b).

Additionally, defendant states that my finding on January 13, 1993, that defendant did not have the mental state for attempted murder, precludes the possibility of upward departure. Essentially, defendant asserts, that because he did not have the mental state for murder, he did not have the mental state to: injure; scare or intimidate; act recklessly; or intend harm to property.

Finally, the defendant argues that a departure here would be based on "pure speculation" as to what could have happened, rather than what actually happened.

I believe that an upward departure under § 3553(b) is warranted in this case. The guidelines specify when departure from the applicable guidelines range is appropriate:

> Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing. Nonetheless, the present section seeks to aid the court by identifying some of the factors

---

4. Also, for the record, I note that there appears to be a number of constitutional questions raised when a trial court cross-references to a state statute, including federalism and due process issues. In *Smith,* the Sixth Circuit did not address these issues (possibly because they were not raised).

that the Commission has not been able to fully take into account in formulating precise guidelines. Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing judge. Similarly, the court may depart from guidelines, even though the reason for departure is listed elsewhere in the guidelines (e.g., as an adjustment or specific offense characteristic), is the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree substantially in excess of that which ordinarily involved in the offense of conviction.

United States v. Gonzales, 929 F.2d 213 (6th Cir.1991) (quoting U.S.S.G. § 5K2.0 (1989 version)).

Here, I find by a preponderance of the evidence that aggravating factors are present that were not taken into account by the sentencing commission under § 2K2.2. Specifically:

(1) Evidence at trial showed that the pipe bomb placed on Mr. Alvarado's van had the explosive power of a small hand grenade;

(2) The pipe bomb exploded at approximately 6:30 a.m. Security officers Jack Hankiewicz and Greg Neese testified that this was the time of shift changes and the parking lot was very busy with vehicle and pedestrian traffic.

(3) Jose Sandoval testified that he heard the explosion from inside the building at Bil Mar.

On these facts, I find that defendant did endanger the safety of others by placing the pipe bomb on Mr. Alvarado's van. Specifically, he endangered the safety of the employees at Bil Mar who were in the process of changing shifts when the explosion occurred. There was a definite likelihood that another person could have been injured.

Moreover, as previously indicated, I also find that defendant intended to use this explosive device to intimidate Mr. Alvarado (which defendant's counsel concedes). This fact is not taken into consideration by the sentencing commission under § 2K2.2. It is certainly an aggravating factor that should be taken into consideration for sentencing.[5]

I note, for the record, that other circuits have upheld an upward departure under § 2K2.2 for factors like similar to those that I have considered today. See, e.g., United States v. Loveday, 922 F.2d 1411 (9th Cir. 1991) (departure for pipe bomb's danger to safety valid): United States v. Michael, 894 F.2d 1457, 1460 n. 2. (5th Cir.1990) (defendant's placing of a bomb under or near the car of one of his co-workers "provides ample ground for a departure from the guidelines . . . .").

I find that, given the nature of defendant's activity—that he used the pipebomb to scare or intimidate another person, and endangered the safety of the workers in the parking lot at Bil Mar Foods—a reasonable upward departure is eight offense levels. Accordingly, with a base offense level of 12; plus a two-point increase for obstruction of justice; plus an eight level upward departure under 18 U.S.C. § 3553(b) for the reasons just stated; defendant's final offense level is 22. A 22 offense level has a range of 41–51 months. The Court orders defendant Cole incarcerated for a period of 48 months.

5. Defendant argues that because this Court found that he did not have the mens rea for attempted murder, then he did not have the mental state to intimidate; to destroy property; or, to endanger the safety of others. The Court did not make such a broad ruling. As the government points out, an individual can have many different mental states. While I did find that defendant did not have the mens rea for attempted murder, I am not precluded from finding that he had a mens rea to intimidate Mr. Alvarado; or to commit some other act.