19 F.3d 19
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl E. COLE, Defendant-Appellant.
 No. 93-1344.
 United States Court of Appeals, Sixth Circuit.
 March 1, 1994.
 
 Before: KEITH and NORRIS, Circuit Judges; ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 After a jury trial, defendant, Carl E. Cole, was convicted of possessing an unregistered destructive device, a pipe bomb, and of making the pipe bomb in violation of 26 U.S.C. Secs. 5861(d) & (f), 5845, 5871, 5822. He raises nine separate issues on appeal, six pertaining to his trial, one pertaining to assistance of counsel, and two concerning his sentence. Because we find no error, the judgment of conviction and sentence is affirmed.
 
 I.
 
 2
 On June 29, 1989, a van owned by Leopoldo Alvarado was bombed at 6:30 a.m., in the parking lot of Bil-Mar Foods during the change of shifts. No one was injured by the explosion, although the van suffered over $400 worth of damage. The Department of Alcohol, Tobacco and Firearms (ATF) investigated the incident and uncovered the following evidence. Alvarado and defendant disliked each other because Alvarado's long-time girlfriend left him for defendant. Defendant later had a conversation with the girlfriend's brother about getting Alvarado "out of his hair" for good, and about how to most effectively plant a bomb on a vehicle. Several weeks before the bombing, defendant exploded two pipe bombs, one of which he admitted to making, in front of his friends, Timothy Martin and Jeffrey Millis. Defendant later admitted to Martin that he had bombed Alvarado's van.
 
 
 3
 When defendant was questioned by ATF agents in September 1989, he stated that he had never made any type of pipe bomb or any other type of explosive, nor did he know how. Nevertheless, approximately one year later, defendant went to Millis' house and asked him to keep a piece of pipe, some fuse, and some black powder because his house was about to be searched. Defendant also asked Millis to lie to the authorities and say that he had exploded the pipe bombs after the van had been bombed.
 
 
 4
 This evidence was presented to a jury and defendant was convicted of both making and possessing a pipe bomb.
 
 II.
 
 5
 On appeal, defendant claims that the district court erred in six separate ways during his trial. He also raises questions concerning the adequacy of his trial counsel, whether he was properly given a two-level enhancement during sentencing for obstruction of justice, and whether the district court abused its discretion in departing upward from the sentence mandated by the guidelines. We will address each of these claims in order.
 
 A. Jury Instructions
 
 6
 Defendant first claims that two of the jury instructions given by the district court were faulty. When the district court charged the jury, it stated:
 
 
 7
 "On or about June 29, 1989, in the Southern Division of the Western District of Michigan"--let me stop there and take judicial notice of something.
 
 
 8
 The United States is divided into judicial districts by the Congress. I think that I said to you earlier in the case how the Western District of Michigan is divided.
 
 
 9
 I want you to know that all of the testimony that we have heard today and yesterday and last week relates to the Western District of Michigan, Southern Division. The city of Muskegon, the town that I forget, Hesperia, and places in between are in the Southern Division of the Western District of Michigan. So you don't have to worry about that as you are deliberating. I am telling you that the events occurred there.
 
 
 10
 ....
 
 
 11
 ... In order for the defendant to be found guilty of that charge, Count 1, the government must prove two elements beyond a reasonable doubt:
 
 
 12
 First, that the defendant, on or about the time and at the place charged in the indictment, knowingly possessed a destructive device; and secondly, that the destructive device was not registered to the defendant in the National Firearms Registration and Transfer Record.
 
 
 13
 ....
 
 
 14
 ... On or about the time and at a place charged in the indictment, knowingly made a destructive device, and secondly, that prior to the making of the destructive device he, the defendant, failed to obtain an approved application form from the Secretary of the Treasury or his delegate showing approval to make and register the destructive device as required by law.
 
 
 15
 Defendant claims that this instruction impermissibly took an essential element of the crime away from jury consideration because the district court told the jury that the events that they had heard about during the trial took place in the district as charged in the indictment.
 
 
 16
 Although it is plain error for a judge to take an essential element of a crime away from jury consideration, United States v. Mentz, 840 F.2d 315, 320 (6th Cir.1988), the judge here specifically charged the jury that it must find defendant "at the place charged in the indictment" knowingly possessed and knowingly made the destructive device. The district court did not usurp the province of the jury by explaining to it the geographic boundaries of the Western District of Michigan. As the Court of Appeals for the Tenth Circuit observed in United States v. Piggie, 622 F.2d 486, 488 (10th Cir.), cert. denied, 449 U.S. 863 (1980) "[g]eography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial."
 
 
 17
 Although defendant claims location implicates a substantive element of the crime, the location of a crime involves venue only, and this circuit has held that venue need only be proved by a preponderance of the evidence. United States v. Charlton, 372 F.2d 663, 665 (6th Cir.), cert. denied, 387 U.S. 936 (1967). Defendant points to nothing indicating that venue or where any of the events transpired was ever a factual issue in his trial. Furthermore, no objection was lodged to the instruction.
 
 
 18
 Defendant also maintains that he was entitled to an instruction that the government was required to prove that he knew a pipe bomb is a destructive device, as opposed to a device having a legitimate use, and that failure to give the instruction amounts to plain error.
 
 
 19
 Defendant relies primarily upon United States v. Williams, 872 F.2d 773 (6th Cir.1989), to establish that a defendant's intended use of and his knowledge that a device he possesses is a destructive device are elements of the crime of possession under 26 U.S.C. Sec. 5861(d). In Williams, this court read into the statute a requirement that the government must prove a defendant knows a weapon is a firearm, as it is statutorily defined, in order to prove a violation of 26 U.S.C. Sec. 5861(d). Id. at 777. Williams involved a semi-automatic sports rifle, which is not a firearm and need not be registered, that had been converted into an automatic rifle, which is a firearm. There were no external modifications of the weapon. The court was disturbed by the possibility that one might possess a rifle, reasonably believing it to be legal, because there were no outward indications that it was different from hundreds of other legal rifles, and still be convicted of a serious felony.
 
 
 20
 The reasoning used by the Williams court is not applicable where the device under consideration is of a type that would place a person on notice that it is likely to be regulated. See United States v. Newcomb, 6 F.3d 1129, 1139 (6th Cir.1993); United States v. Herbert, 698 F.2d 981, 987 (9th Cir.), cert. denied, 464 U.S. 821 (1983) (relied on by the Williams court). Pipe bombs are inherently dangerous and serve no useful purpose. The pipe bomb defendant was accused of possessing had been used to bomb a van and was obviously intended as a weapon and not for sport. Accordingly, the Williams analysis did not require a knowledge instruction under the facts of this case.
 
 
 21
 Even were we to read Williams more expansively, jury instructions are to be viewed as a whole and not in artificial isolation. The district court in this case told the jury that a destructive device does not include a device not intended as a weapon. The jury therefore had to determine that the pipe bomb was intended as a weapon. See United States v. Price, 877 F.2d 334, 338 (5th Cir.1989) (upholding a similar jury instruction because the district court read the statutory definition of destructive device to the jury).
 
 B. Sufficiency of the Evidence
 
 22
 Defendant contends that there was insufficient evidence to convict him. This court has held that in assessing a challenge to the sufficiency of the evidence, a court must "determine whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt." United States v. Poulos, 895 F.2d 1113, 1117 (6th Cir.1990) (internal quotations and citations omitted). This standard applies to both direct and circumstantial evidence. United States v. Moreno, 933 F.2d 362, 373 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991).
 
 
 23
 Defendant believes there is insufficient evidence to convict him of possessing the pipe bomb because most of the evidence at trial was aimed at demonstrating that he had bombed Alvarado's van. The government proved at trial that a pipe bomb was planted near the engine of a van. The only question was who had made and installed it.
 
 
 24
 At trial the government introduced evidence that defendant had admitted to a friend that he had bombed the van. It also provided evidence of his motive, his experience with pipe bombs, and his conversations with others about both getting rid of Alvarado and about how best to bomb a vehicle. This evidence was clearly sufficient to sustain the conviction as to the possession charge.
 
 
 25
 Defendant also claims that there is insufficient evidence to convict him of having knowingly made a pipe bomb. Although it is true the government did not present direct evidence that he made the pipe bomb, it did introduce circumstantial evidence to that effect. Drawing all inferences in favor of the government, there is more than enough evidence to convict on this charge. Although defendant had told ATF agents that he had never made a pipe bomb, two of his friends testified that in the month before the bombing incident defendant had experimented with and ignited at least two other pipe bombs. Defendant also took pipe, fuse material, and black powder to a friend's house to hide, when he believed agents were going to search his house. Furthermore, there was evidence that defendant asked one of his friends to lie about when he had experimented with the pipe bombs, and that he had conversations with his girlfriend's brother about making pipe bombs and placing them on a vehicle. This evidence shows defendant had a motive, ability, and the tools to make a pipe bomb; it is sufficient to sustain the conviction.
 
 C. Relevancy of Evidence
 
 26
 Defendant claims that the trial court allowed so much irrelevant evidence that, even though none of it was objected to, its admission constituted plain error. It is not clear to which evidence defendant is referring, although it appears to be evidence that he bombed the van. Defendant argues that the evidence of the bombing produced unfair prejudice or confusion of the issues in violation of Federal Rule of Evidence 403. He argues that the jury believed that this was a bombing trial, and not a trial for making and possessing a pipe bomb, because of the government's emphasis on the bombing.
 
 
 27
 The government repeatedly stated during closing argument that the case was about defendant's possession of the pipe bomb, not about the bombing of Alvarado's van. The government did not mislead the jury about the nature of the charges. Because defendant failed to object to the evidence at trial, and cannot point to parts of the record with specific complaints of prejudice, we conclude that the district court did not commit plain error by admitting the evidence.
 
 D. Federal Rule of Evidence 404(b)
 
 28
 Defendant next claims that evidence that he made and exploded pipe bombs several weeks before the incident for which he was charged was improperly admitted in violation of Federal Rule of Evidence 404(b).[1]
 
 
 29
 A district court's decision to admit evidence under Rule 404(b) is subject to an abuse of discretion review. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991). The district court held a hearing to evaluate defendant's motion in limine to prevent the evidence of the prior pipe bombs from being admitted. The district court allowed the evidence because it was relevant to defendant's credibility, since he had told the ATF agents that he did not know how to make a pipe bomb, and it showed that he had a motive to lie. The district court concluded that state of mind is an element of both the crime of possessing and making a destructive device, and that defendant's prior fabrication of a pipe bomb helped shed light on his knowledge and lack of mistake.
 
 
 30
 In reviewing whether evidence was properly admitted under Rule 404(b), this court applies a two-step analysis. First, the court must ascertain whether the evidence is relevant and is being introduced for a proper purpose. Id. at 499. The court must then determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Id. Under this test the evidence was properly admitted. Defendant's possessing and making pipe bombs earlier is relevant to whether he was capable of making pipe bombs at a later date. The evidence was relevant to questions raised about defendant's credibility and to show a motive, knowledge, or lack of mistake in making the pipe bomb.
 
 
 31
 The evidence was an important part of the government's proof, and helped to tie together defendant's plan to bomb the van and his ability to carry that plan out by making and possessing a pipe bomb. The district court carefully considered this evidence and did not abuse its discretion by admitting it.
 
 E. Ineffective Assistance of Counsel
 
 32
 Defendant next asserts that this court should reverse his conviction because he received ineffective assistance of counsel at his trial. On direct appeal, this court rarely entertains a claim concerning ineffective assistance of counsel, especially when, as here, the claim was not raised in the trial court, and an adequate factual record was not developed. See United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991). The claim is better raised in postconviction relief proceedings where the facts necessary to its resolution can be fully developed.
 
 F. Obstruction of Justice
 
 33
 The district court enhanced defendant's base offense level by two levels for obstruction of justice. A district court's factual findings that underlie its sentencing decisions are reviewed under a clearly erroneous standard. United States v. Williams, 952 F.2d 1504, 1515 (6th Cir.1991). Defendant was sentenced under the 1988 Sentencing Guidelines, Sec. 3C1.1, which provided: "If a defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level ... by 2 levels." Application Note 1(a) stated that this section may apply to "destroying or concealing material evidence, or attempting to do so."
 
 
 34
 The district court held that defendant had obstructed justice by taking pipe, fuse, and powder to his friend's house approximately one year after the bombing incident because defendant believed his house would be searched. On appeal, he argues that the evidence concealed was not material and that it did not obstruct the investigation. Since defendant did not raise the issue of materiality below, it is waived on appeal. It is clear that defendant attempted to conceal evidence from law enforcement officers. His contemporaneous statements when he asked his friend to hide the evidence show that intent. The district court's decision to enhance the offense level for obstruction of justice was not therefore erroneous.
 
 G. The Upward Departure
 
 35
 Finally, defendant contends that the district court improperly departed upward when he was sentenced. The 1988 version of the Sentencing Guidelines classified all convictions under 26 U.S.C. Secs. 5861(d) and (f) under Sec. 2K2.2. The base offense level for commission of these crimes was twelve, and defendant's activities did not qualify for any of the offense specific enhancements. The district court, after adding two levels for obstruction of justice, departed upward by an additional eight levels. It specifically found that defendant's conduct was aggravated by a number of factors: the pipe bomb had the explosive power of a small grenade; it was exploded in a busy, public parking lot where other people were likely to be present; the explosion was quite loud; and defendant significantly endangered the safety of others and risked substantial injury to human life. The court also found that defendant intended the explosive device to intimidate Alvarado. After concluding that none of these factors were taken into account by the Sentencing Commission when it promulgated U.S.S.G. Sec. 2K2.2, the court discussed pipe bomb cases where almost identical departures were approved for similar reasons under the same guidelines section. See United States v. Loveday, 922 F.2d 1411, 1416-17 (9th Cir.1991); United States v. Michael, 894 F.2d 1457 (5th Cir.1990).
 
 
 36
 This court pursues a three-part analysis in determining whether an upward departure is warranted. First, we determine whether the circumstances relied upon for a departure are, as a matter of law, sufficiently unusual to warrant departure. Second, we review the district court's findings of fact to determine whether the circumstances are actually present in the case. These findings are reviewed for clear error. Third, we evaluate the reasonableness of the departure. United States v. Joan, 883 F.2d 491, 494 (6th Cir.1989).
 
 
 37
 Defendant argues that the reasons given by the district court were not unusual enough to warrant a departure. Three other appellate courts have concluded that the circumstances inherent in possession of a pipe bomb are unusual enough to warrant an upward departure. Opinions from these courts discuss the unique dangers of pipe bombs--they are homemade, unstable, capable of damaging numerous people, have no legitimate purpose, and may be employed in a manner that avoids apprehension. See Loveday, 922 F.2d 1411, Michael, 894 F.2d 1457, and United States v. Dempsey, 957 F.2d 831, 834 (11th Cir.), cert. denied, 113 S.Ct. 241 (1992). These courts have found that these factors were not adequately taken into account by the Sentencing Commission.
 
 
 38
 The reasons relied upon by the district court warrant departure. The pipe bomb had a strong explosive capacity and was exploded in a busy area. Although no one was seriously injured and there was minimal property damage, the risk of harm attributable to the bomb was substantial.
 
 
 39
 The district court relied upon the departures approved in Loveday and Michael in determining the appropriate upward departure in this case. Although a specific explanation of the departure would be preferable, the court's reliance upon these cases adequately reveals its thought process in selecting the degree of departure. Because the final sentence was well within the ten-year maximum allowed by 26 U.S.C. Sec. 5871, and because of the substantial risk of harm to others, the departure was reasonable and is affirmed.
 
 III.
 
 40
 Defendant's conviction and sentence is therefore affirmed in its entirety.
 
 
 
 [1]
 Fed.R.Evid. 404(b) states:
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....